

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 13, 2020**

_____
United States Bankruptcy Judge
_____

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| CHRIS RIGOULOT | § § | CASE 19-31677 |
| DEBTOR | § | |

| | | |
|---|---|---|
| ASCENTIUM CAPITAL, LLC | § § | |
| PLAINTIFF | § § | |
| V. | § § | ADV NO. 19-03131 |
| CHRIS RIGOULOT | § § | |
| DEFENDANT | § | |

FINDINGS OF FACT AND CONCLUSION OF LAW AND JUDGMENT

Below is the court's ruling on the Plaintiff's Original Complaint to Determine Dischargeability of Debt. The court finds and concludes that Mr. Rigoulot's actions, in causing his company Noble Rey Brewing Company, LLC ("Noble Rey") to sell certain collateral of the plaintiff without remitting to the plaintiff all sale proceeds—while constituting a breach of contract and conversion—did not give rise to a debt for willful or malicious injury, as contemplated in § 523(a)(6). As such, the debt owed to Ascentium will be discharged.

## INTRODUCTION

The matter was tried before the court on October 19, 2020 (the "Trial"). Attorney Jared Rougeu appeared on behalf of the Plaintiff ("Ascentium"), and attorney Eric Liepins appeared on behalf of the Defendant-Debtor ("Mr. Rigoulot"). Two witnesses testified: Jerry Noon, Ascentium's Vice President of Asset Management and Mr. Rigoulot. The total testimony did not exceed thirty minutes. The parties offered and the court admitted into evidence only six exhibits. The parties stipulated to most of the facts, and a list of these facts can be found in the Joint Pretrial Order. [Doc. No. 23].

## FINDINGS OF FACT

As noted above, the parties agree on most facts. In summary, those facts, which the court hereby finds, are as follows:

a) In March 2017, Noble Rey entered into an Equipment Finance Agreement (the "EFA") with Pinnacle Capital Partners, LLC ("Pinnacle") in which Pinnacle financed the purchase of certain canning equipment (the "Collateral") in exchange for specified payments by Noble Rey.

b) Holding a majority interest in Noble Rey, Mr. Rigoulot signed the EFA on behalf of Noble Rey and guaranteed payment and performance under the EFA.

c) Pinnacle obtained and perfected a security interest in the Collateral by filing a UCC-1 Financing Statement with the Texas Secretary of State on March 13, 2017.

d) Pinnacle assigned its security interest to Ascentium. An amendment to the UCC-1 reflecting the assignment was filed with the Texas Secretary of State on July 21, 2017.

e) In November 2018, Mr. Rigoulot sold the Collateral to an unrelated company called Optimus Fulfill LLC for $102,500.00, which then took possession of the Collateral [the parties' stipulated facts indicate that Mr. Rigoulot sold the Collateral, although it was technically Nobel Rey's to sell—no sale documentation was presented into evidence].

f) From the sale proceeds, two payments of $3,078.82 each were made to Ascentium on or about November 15, 2018 and December 16, 2018.

g) The remaining $96,342.36 of the sale proceeds were not paid to Ascentium, and the remaining balance owed on the EFA exceeds $96,342.36.

h) On December 19, 2018, Noble Rey filed its own bankruptcy petition in this court as Case No. 18-34214 and made no further payments on the EFA.

Mr. Rigoulot later filed the currently pending Chapter 7 bankruptcy case on May 15, 2019. The court found Mr. Rigoulot to be a credible witness. According to Mr. Rigoulot's credible testimony at the Trial, Mr. Rigoulot co-owned Noble Rey with his father. His father managed the financial operations until he left the business in late 2018. Mr. Rigoulot, initially managing only logistics and production, took over financial operations at that time. He had no experience or training in financial management, and Ascentium presented no evidence addressing Mr. Rigoulot's experience, education, or knowledge of financial matters. Mr. Rigoulot credibly testified that he did not know that selling the Collateral required Ascentium's consent. Further, neither party to the sale had legal counsel.

Mr. Rigoulot credibly testified that he deposited the $102,500 of sale proceeds into Noble Rey's business account "to pay vendors and keep the business open." Exhibit 6 reflects Mr. Rigoulot's two post-sale payments to Ascentium, which was a continuation of the timely, consistent payments that had occurred throughout the life of the loan. While Noble Rey filed for bankruptcy three months after the sale, the court heard testimony that it continued to operate in Chapter 11. The preponderance of the evidence suggests that the proceeds of the sale went toward operating Noble

Rey. Ascentium did not introduce into evidence any bank statements or other evidence that might contradict Mr. Rigoulot's credible testimony to this fact.

The EFA, guaranteed by Mr. Rigoulot, requires Ascentium's written consent prior to any transfer of the Collateral. The court finds that Ascentium did not provide the required consent, and that Mr. Rigoulot, indeed, breached the EFA by selling the Collateral. Further, the court concludes that Mr. Rigoulot's and Noble Rey's failure to remit the sale proceeds to Ascentium constitutes conversion.

The remaining legal question is whether such conversion qualifies as an injury to Ascentium's property such that Ascentium's resulting damages should be excepted from discharge under § 523(a)(6). This turns on whether Mr. Rigoulot willfully and maliciously inflicted injury upon Ascentium. Based on the dearth of evidence offered, the court concludes that Ascentium did not meet its burden of proof required to establish that its injury resulted from willful and malicious activity. Thus, the debt owed to Ascentium will be discharged.

## CONCLUSIONS OF LAW

11 U.S.C. § 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

The Supreme Court of the United States has provided guidelines for determining whether a debt arises from a willful and malicious injury and, therefore, is excepted from discharge under 11 U.S.C. § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 59 (1990). By determining that the word "***willful***" in Section 523(a)(6) modifies the word "***injury***," the Court concluded that the provision applies to "acts done with the actual intent to cause injury," but does not necessarily apply to every intentional act that happens to cause an injury. *Id.* at 61. Thus, neither a claim for breach of contract nor the tort of conversion necessarily involves a willful injury. *Id.* at 62.

Applying the Court's standard, the Fifth Circuit has held that for a debt to be nondischargeable under § 523(a)(6), a debtor must have acted with "objective substantial certainty or subjective motive" to inflict injury. *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998). While the Fifth Circuit, in dicta, has acknowledged that a knowing breach of

contract "may involve an intentional or substantially certain injury[,]" the mere existence of such breach is not enough. *Texas v. Walker*, 142 F.3d 813, 823 (5th Cit. 1998). The Fifth Circuit has required the injured creditor to provide "explicit evidence" to that end. *In re Williams*, 337 F.3d 504, 511 (5th Cir. 2003). As such, the Fifth Circuit, in *Williams* and *Walker*, refused to find that the debtors breached their contracts willfully or maliciously.

Similarly, an aggrieved creditor must show more than conversion resulting from a debtor's breach of contract. Although similar in language to intentional torts, Section 523(a)(6) creates a narrower category of conduct. *Miller,* 156 F.3d at 604 (noting that, "[m]erely because a tort is classified as intentional does not mean that any injury caused by the tortfeasor is willful.").

In conclusion, Ascentium bears the burden of establishing, by a preponderance of the evidence, that the debt resulting from the sale of the Collateral is nondischargable. Thus, Ascentium must provide ***explicit*** evidence that Mr. Rigoulot's selling of the Collateral was intended to or was substantially certain to cause injury to Ascentium. *In re Williams*, 337 F.3d 504, 511 (5th Cir. 2003). Based on the scarce evidence before it, the court concludes that Ascentium did not meet its burden. Thus, the debt owed to Ascentium will be discharged. It is therefore,

ORDERED, ADJUDGED AND DECREED Judgment is favor of the Defendant shall enter, and the debt asserted by Ascentium against Defendant is discharged.

### End of Order ###